**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

CYNTHIA L. HART,

    Plaintiff,

v.                                          CASE NO. 5:11cv271-MP-MD

MICHAEL J. ASTRUE,

    Defendant.

_____/

**O R D E R**

      This matter is before the court for consideration of the magistrate judge's Report and Recommendation dated June 19, 2012. (Doc. 16). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). I have made a *de novo* determination of plaintiff's timely filed objections, which are similar to her arguments on appeal from the Commissioner's final determination. Specifically, plaintiff objects to the reduced weight accorded to plaintiff's treating physician's opinion, to the finding that her mental impairment did not cause severe limitations in her ability to work, and to the credibility finding regarding plaintiff's testimony.

<u>Dr. Maddox's Opinion</u>

      First, plaintiff objects to the magistrate judge's finding that "the ALJ's granting great consideration, but not controlling weight to Dr. Maddox's November 26, 2007 letter . . . is supported with substantial competent evidence as required[.]" She argues that giving "diminished or no weight to the diagnostic and functionality opinions of treating neurologist Maddox remains unjustified." Generally, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Quick v. Commissioner of Social Sec.*, 403 Fed. Appx. 381, 383 (11th Cir. 2010) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause may exist where "evidence supported a contrary finding." *See Lewis*, 125 F.3d at 1440. Here, the ALJ

concluded that the narrative opinion of Dr. Maddox "was not well supported by objective findings and [was] not consistent with the other evidence of record."  This evidence includes the fact that (1) plaintiff had at times denied being in chronic pain, (2) plaintiff's normal mental state undermined Dr. Maddox's opinion, (3) nurse Breland only suggested the diagnosis of thalamic pain syndrome in the absence of objective evidence of radiculopathy, and (4) plaintiff engaged in daily activities.

Plaintiff contends that the magistrate judge was incorrect in concluding that plaintiff had denied being in chronic pain.  The magistrate judge cited questionnaires which plaintiff filled out upon visiting Dr. Bieda, a family physician, in support of the ALJ's similar finding.  Plaintiff argues that these questionnaires do not support the finding because on two of plaintiff's four trips plaintiff marked on them that she was experiencing "pain now."  Plaintiff also argues that on the first questionnaire she marked that she was experiencing chronic pain, and on the second she described symptoms consistent with chronic pain.  However, plaintiff still did not report having "pain now" or "chronic pain" on the other two visits to Dr. Bieda, which is inconsistent with her prior reports.  Thus, the magistrate judge correctly determined that there is evidence in the record to support the ALJ's conclusion.

Plaintiff next finds fault with the magistrate judge's "unreasoned endorsement" of the ALJ's finding that plaintiff's normal mental state undermined Dr. Maddox's opinion.  Specifically, plaintiff contends that the ALJ's determination that plaintiff's mental status was normal, on "any number of occasions does not diminish the value of Dr. Maddox's assessment of" plaintiff's physical condition.  Plaintiff asserts that "[t]he notion that Dr. Maddox's opinion was based solely or even 'largely' on the existence of cognitive deficits is of the ALJ's own creation[.]"  Dr. Maddox's brief narrative mentions plaintiff's mental condition several times in supporting the opinion that plaintiff is unable to work.  Dr. Maddox states that "[plaintiff's] cognitive function is limited," that "[s]he already had cognitive deficits for which she had to work hard to compensate for," and that plaintiff is unable to work as a result of her conditions including "cognitive dysfunction."  The doctor concludes that in light of plaintiff's mental state she could not overcome the effects caused by the medication used to treat her thalamic pain syndrome.  Thus, Dr. Maddox's opinion that plaintiff was unable to work does appear to be based in significant part on plaintiff's

mental status, as the ALJ found. While the ALJ's finding indeed does not diminish Dr. Maddox's assessment of plaintiff's physical condition as plaintiff claims, it still undermines the doctor's opinion that plaintiff is unable to work. Thus the magistrate judge did not err by finding that evidence of plaintiff's normal mental state supported the ALJ's conclusion.

Plaintiff also contends that "[t]he Magistrate failed to address the ALJ's third stated rationale for refusing to grant weight to Dr. Maddox's assessment" that "nurse practitioner Breland only suggested the diagnosis of thalamic pain syndrome 'in the absence of objective evidence of radiculopathy.'" Plaintiff asserts that this interpretation of plaintiff's diagnosis is false. Plaintiff complains that instead of addressing that rationale, the magistrate judge "offered some of his own reasoning as to why he presumably would have granted Dr. Maddox's assessment no weight." Plaintiff concludes that the magistrate judge's reasoning is of "no moment" because a court may only review the reasons and explanations offered by the ALJ.

The magistrate judge did not actually address the ALJ's conclusion that Breland suggested the diagnosis of thalamic pain syndrome in the absence of evidence of radiculopathy. Although Breland may have done so, there is evidence that suggests otherwise. As plaintiff points out, there is at least one simultaneous diagnosis on the record by Dr. Maddox of radiculopathy and thalamic pain syndrome. However, the later medical reports from Dr. Maddox's office do appear to move away from radiculopathy after the thalamic pain syndrome diagnosis was made. There was also some suggestion in the interpretations of plaintiff's CT scans that plaintiff's spinal nerves were not narrowed to a point to cause radiculopathy, or at least perhaps not to cause pain in the regions plaintiff reported. While plaintiff is arguably correct that thalamic pain syndrome was not diagnosed in the absence of radiculopathy, there was still enough evidence in the record for the ALJ to reasonably make such a finding.

Plaintiff's contention that the magistrate judge was supplying his own rationales is inaccurate. Despite plaintiff's characterization of the magistrate judge's reasoning as uniquely his own, the ALJ also cited plaintiff's engaging in daily activities as a reason why "the complaints of a disabling level of pain are not credible and not reasonably supported by objective medical evidence." Although the evidence of daily activities itself would not

constitute substantial evidence, when taken together with the other evidence, and the ALJ's findings, this is substantial evidence to support the ALJ's decision. Thus, the magistrate judge's finding that there was good cause to support the ALJ's decision to grant diminished weight to plaintiff's treating physician, which was supported by substantial evidence, is correct.

ALJ's Mental Impairment Finding

Plaintiff's next objects to the magistrate judge's finding that "the medical records support the ALJ's conclusion that [plaintiff] suffered only from mild mental impairment." Plaintiff argues that "[t]he finding that [plaintiff's] mental impairments impose no functional restrictions is based on an improper assessment of the treating and consultative source evidence." Plaintiff contends the ALJ's conclusion fails to adequately consider the substance of the clinical findings of the consultative psychologist [Dr. Horvat], and merely defers to his conclusion. Plaintiff's position is that Dr. Horvat's opinion that there "are no psychological reasons why [plaintiff] cannot" return to work does not follow from his diagnosis of a major depressive episode and post traumatic stress disorder.

As the magistrate judge pointed out, the worst diagnosis plaintiff received over three psychological evaluations was that plaintiff was suffering from minor limitations due to her affective disorder and PTSD. It was never suggested that plaintiff's ability to work would be severely affected by them. Plaintiff did have one negative evaluation of her mental state when she was involuntarily hospitalized after creating a disturbance. However, that episode appears to have been caused by the external stressors of financial difficulty, including a home foreclosure. Plaintiff's treatment was considered successful following the episode. The hospitalization notwithstanding, substantial evidence supported the ALJ's conclusion that plaintiff did not have a severe mental impairment that would prevent her from working. Thus, the Report and Recommendation's analysis on the issue of plaintiff's mental impairment is correct.

Plaintiff also objects that the magistrate judge "disturbingly" cited irrelevant support for the proposition that plaintiff had a normal mental status following the hospitalization episode. While the evaluations of mental state made after plaintiff was hospitalized were not ironclad proof of normal mental status, plaintiff overreacts in her objection. The

magistrate judge cited to plaintiff's medical visits to Dr. Bieda where plaintiff did not exhibit any characteristics of an abnormal mental state. It is true that the visits were not made for psychological counseling, and therefore do not offer rigorous psychological insight. They do suggest, however, that plaintiff was not suffering from any obvious, debilitating mental condition at the time. Even without the opinions expressed by Dr. Bieda, sufficient evidence exists in the record to support the ALJ's finding. Thus, plaintiff's objection that the report and recommendation contains a "disturbing" error is not persuasive.

ALJ's Credibility Finding

Finally, plaintiff objects to the magistrate judge's finding that the "ALJ adequately explained" the decision to discredit plaintiff's testimony. Plaintiff argues that "[t]he finding that [plaintiff's] testimony regarding her functional limitations is not credible is based on a legally erroneous analysis of the issue and lacks the support of substantial evidence." "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Klawinski v. Commissioner of Social Sec.*, 391 Fed. Appx. 772, 777 (11th Cir. 2010) (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The magistrate judge cited with approval the ALJ's findings that plaintiff's "activities of daily living, in addition to having moved from Florida to California and back 'suggested that her daily activities were not as limited, at least at times, as reported." Plaintiff contends that these findings are not sufficient to show that plaintiff's activities "exceed those of someone who claims to be disabled." Plaintiff asserts that "[i]n the absence of actual evidence on the specific details of those activities, the ALJ is not free to assume them." Plaintiff also cites *Lewis v. Callahan* for the proposition that performing basic activities for short periods is not inconsistent with a disability claim.[1]

Here, the evidence of the duration and exact nature of plaintiff's daily activities was scant. Plaintiff claimed to enjoy "dancing, reading and making cards on her computer." Plaintiff also claimed on a daily activities questionnaire that she lived alone, prepared her own meals, and did her own housework. This alone would not constitute substantial

---

[1] Still, an "ALJ may consider a claimant's daily activities when evaluating complaints of disability." *Couch v. Astrue*, 267 Fed. Appx. 853, 856 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

*Case No: 5:11cv271-MP-MD*

evidence to uphold the ALJ's credibility finding. Although the magistrate judge also mentioned the ALJ's rationale that plaintiff's "complaints of a disabling level of pain were not reasonably supported by the objective medical evidence," the substantiality of the objective medical evidence was not discussed. Thus, a de novo review of the substantiality of the evidence is appropriate.

Plaintiff appears to have suffered from seizures in the 1990s associated with multiple gunshot wounds from the past. A decade passed between treatment for plaintiff's seizures before she came to Dr. Maddox and complained of the debilitating pain on her right side, at issue here. In choosing to discredit plaintiff's testimony about the level of pain, the ALJ primarily considered the opinions of Dr. McKeown and Dr. Presser from CT and MRI scans ordered by Dr. Maddox, as well as a consultative examination with Dr. Oksanen. Dr McKeown's opinion of plaintiff's right shoulder CT scan was that it was "essentially negative." The CT scan of plaintiff's cervical spine suggested at most minor narrowing of a nerve near the C6-7 disk, which would be unlikely to cause radiculopathic pain. The MRI scans did not suggest narrowing of plaintiff's spinal nerves either. Dr. Presser's review of the Cervical and Lumbar MRIs reflects small disk bulges, notably at C6-7 and L5-S1, but no visible stenosis (pinching of the nerve). The results from Dr. Oksanen's exam were that plaintiff's grip and upper extremity range of motion were normal on both sides, although plaintiff had subjective right wrist discomfort. Dr. Oksanen also found a moderately limited range of motion in plaintiff's back.

The ALJ concluded that while plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . claimants statements concerning the intensity, persistence and limiting affects of those symptoms are not credible . . . ." The court finds the ALJ's conclusion supported by the record. The only medical evidence which would suggest the level of pain plaintiff subjectively complained of was the diagnosis of thalamic pain syndrome. As the ALJ pointed out, that diagnosis was based primarily on plaintiff's similar subjective complaints to Breland and Maddox. The CT/MRI scans do not support a diagnosis of radiculopathy. Furthermore, plaintiff's exam with Dr. Oksanen reflects only a moderate limitation to the spinal range of motion and, as mentioned above, plaintiff denied chronic pain in connection with visits to Dr.

Bieda. Thus, the objective medical evidence substantially supported the ALJ's decision to discredit plaintiff's testimony. Accordingly, the ALJ's decision to discredit plaintiff's testimony is affirmed.

Having considered the Report and Recommendation, and any objections thereto timely filed, I have determined that the Report and Recommendation should be adopted.

Accordingly, it is now ORDERED as follows:

1. The magistrate judge's Report and Recommendation is adopted and incorporated by reference in this order.

2. The final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance and Supplemental Security Income benefits is AFFIRMED.

**DONE and ORDERED** this 18th day of September, 2012.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE**